## HOLLOWOA *v.* BUCK.

### Opinion delivered June 20, 1927.

1. WILLS—FAMILY SETTLEMENT—CONSIDERATION.—An agreement of a devisee to divide land given him under his mother's will with his sisters, for which cash payment was to be made, *held* not void for want of consideration, where based on the promise of the sisters not to contest the will, regardless of whether such contest might have been successful.

2. COMPROMISE AND SETTLEMENT—FAMILY SETTLEMENT.—Family settlement of property rights, fairly made, will not be set aside except for very strong and cogent reasons, and the consideration and prior legal rights of the parties will not be closely scrutinized.

3. SPECIFIC PERFORMANCE—NECESSITY OF TENDER.—In a suit by sisters against a brother for specific performance of a family

settlement by which the brother, as vendor, was to divide property received under his mother's will, failure of the sisters, as vendees, to make tender of the amount agreed to be paid was no defense, where the brother had repudiated the agreement and ordered the sisters off the premises, as a tender would have been useless.

4. TENDER—WHEN USELESS.—The law does not require that a tender be made under circumstances where it would be vain and useless.

5. FRAUDS, STATUTE OF—PART PERFORMANCE.—Where vendees took possession of land which the vendor agreed to convey in consideration of a family settlement, and fenced and pastured it with the vendor's knowledge and consent, it was *held* sufficient performance to take a parol contract out of the statutes.

6. FRAUDS, STATUTE OF—PART PERFORMANCE.—A parol contract taken out of the statute as to one of several vendees by part performance is taken out of the statute as to all.

Appeal from Pope Chancery Court; *W. E. Atkinson,* Chancellor; affirmed.

*Robert Bailey,* for appellant.

*Hays, Priddy & Rorex,* for appellee.

McHANEY, J. Appellant, S. W. Hollowoa, and appellees are the children and heirs at law of W. E. and Betty Hollowoa, who were the owners of 35 acres of land inside the corporate limits on the west side of the city of Russellville. The father had purchased 20 acres thereof from Lawrence Russell, $233 of the purchase price thereof remained unpaid at the time of his death in 1896. The mother owned 15 acres adjoining in her own right, and, after the death of her husband, paid off the balance of the purchase price on the 20-acre tract and took title thereto in her own name. Their residence was located on this 20 acres, and the mother continued to live thereon until her death on October 21, 1921. The mother had given three of her children an acre of land each for a home, and all the children, except appellant, had married, he continuing to live with his mother and look after her in her old age. The proof shows appellant to be without education, being unable to read and write, but can sign his name with difficulty. Three days prior to her death the mother made a will, which was not

properly attested, in which she gave all her property to appellant, except $1 to each of the appellees, and the request that appellant convey an acre of land to her daughter, Stella Burke, in order to equalize matters among all the appellees. An exact copy of the will is as follows:

"I, Bettie Hollowoa, do make this my last will and testament, hereby revoking all former wills by me made.

"First: To my beloved son, J. W. Hollowoa, and my beloved daughters, Irene Buck, Stella Burke and Lizzie Moore, I give one ($1) dollar each, and no more; I have heretofore given them out of my estate; that is all, except Stella Burke, which I will hereafter provide for to make her equal with the others.

"Second: I give, devise and bequeath all the rest of my property, personal, real and mixed, to my beloved son, Sullivan Hollowoa, he having stayed at home and cared for me in my last day; it is my request that he pay the debts incurred by my last illness, my funeral expenses, and all my other just debts, out of my property, and that he deed Stella Burke one acre for a home and to make her equal with the other children.

"Third: I hereby appoint my beloved son, Sullivan Hollowoa, as executor of this my last will and testament.

"This October 18, 1921.

"Bettie Hollowoa.

"Witness: W. D. Vance, J. W. Hollowoa, Irene Buck."

This will was probated October 28, 1921. Appellant continued to live on the land from the death of his mother, and in March, 1922, married a wife who was objectionable to some of the appellees. A day or two after his marriage, appellee, Irene Buck, advised appellant that they were going to contest the will unless he made a settlement with the other heirs. He then went home with Irene Buck and, in the presence of appellee, Lizzie Moore, and in the hearing of appellee, Stella Burke, agreed that, in order to avoid litigation, they would make a division of the land, employ a surveyor, and lay off the

tracts in substantially equal parcels, he to retain the residence and seven acres of ground, and each appellee was to pay appellant $60. Pursuant to this agreement, a surveyor was employed, the tracts laid off, in which appellant assisted, each appellee took possession of his or her respective tract, appellees Buck and Moore fencing their tracts with the knowledge, consent and without objection from appellant. They engaged counsel, who prepared deeds, conveying the respective tracts in accordance with the agreement, which were signed by all the heirs except appellant. The final closing up of the matter dragged along until the year had expired in which to appeal from the order probating the will, whereupon appellant refused to carry out the agreement by executing the deeds, and, in December, 1922, tore down the fences placed there by his sisters, with his knowledge and consent, in pursuance of such settlement agreement, and took possession of said lands. Suit was thereafter brought against appellant to enforce this agreement, as a family settlement, for specific performance. The chancery court entered a decree carrying out the settlement, from which comes this appeal.

Appellant insists that, although he entered into the agreement and settlement heretofore set out, it was without consideration and void, for the reason there was no valid ground on which to base a contest of his mother's will. In 5 R. C. L., § 6, page 881, it is said: "A doubtful or disputed claim, sufficient to constitute a good consideration for an executory contract of compromise, has been defined as one honestly and in good faith asserted, arising from a state of facts upon which a cause of action can be predicated, with the reasonable belief on the part of the party asserting it that he has a fair chance of sustaining his claim, and concerning which an honest controversy may arise. although in fact the claim may be wholly unfounded."

Again, on page 883, it is said: "Hence it is a general rule in this country that compromises are to be favored, without regard to the nature of the controversy com-

promised, and that they cannot be set aside because the event shows all the gain to have been on one side and all the sacrifice on the other, if the parties have acted in good faith, and with a belief of the actual existence of the rights which they have respectively waived or abandoned; and, if a settlement be made in regard to such subject, free from fraud or mistake, whereby there is a surrender or satisfaction, in whole or in part, of a claim upon one side in exchange for or in consideration of a surrender or satisfaction of a claim in whole or in part, or of something of value, upon the other, however baseless may be the claim upon either side or harsh the terms as to either of the parties, the other cannot successfully impeach the agreement in a court of justice. If the settlement is characterized by good faith, the court will not look into the question of law or fact in dispute between the parties and determine which is right, even though it ultimately appear that the claim was unfounded in the law; provided, however, it is not wholly without legal basis or upon an inherently illegal and void consideration.''

Then, again, this was a family settlement of property rights, fairly made, and will not be set aside except for very strong and cogent reasons; neither will the consideration for the settlement nor the prior legal rights of the parties be minutely inquired into. As was said in *Pate* v. *Johnson,* 15 Ark. 275: ''Amicable and family settlements are to be encouraged, and, when fairly made, * * * strong reasons must exist to warrant interference on the part of a court of equity.''

The above was quoted in *Martin* v. *Martin,* 98 Ark. 93, 104, 135 S. W. 348, 353, where it was said:

''This was, in effect, a family settlement of the interests of these members of the family in these two remaining tracts of land which came from these two estates of the family. Courts of equity have uniformly upheld and sustained family arrangements in reference to property where no fraud or imposition was practiced. The motive in such cases is to preserve the peace and harmony of

families. The consideration of the transaction and the strict legal rights of the parties are not closely scrutinized in such settlements, but equity is anxious to encourage and enforce them.'' *Campbell* v. *Hopkins*, 15 Ark. 51; *Turner* v. *Davis*, 41 Ark. 270; *Giers* v. *Hudson*, 102 Ark. 232, 143 S. W. 916; *Felton* v. *Brown*, 102 Ark. 658, 145 S. W. 552; *Dudgeon* v. *Dudgeon*, 119 Ark. 128, 177 S. W. 402.

It is therefore not necessary for us to determine whether a contest of the will might have been successful. The forbearance of appellees in this regard was sufficient consideration to support appellant's agreement to settle.

There is no merit to the contention that, since appellees failed to make tender to him of the $60 each agreed to pay, he was justified in refusing to execute the deeds. The proof shows he tore down the fences and notified them to stay off the premises, and refused to carry out the agreement. It would have been a vain and useless thing to have made a tender under such circumstances, which the law does not require. Moreover, the proof shows that, if he had executed the deeds and deposited them in the bank, as he was requested and directed to do, for delivery on payment, same would have been paid.

The only other question of sufficient importance to consider here is, was it necessary, under the facts in this case, for the settlement or agreement to be in writing, since it involved the conveyance of real estate? This question must also be decided against appellant. The undisputed proof shows that at least two of the appellees actually entered into possession of their tracts, fenced them, pastured them, and exercised other acts of ownership over them with appellant's full knowledge and consent. They were therefore in the same attitude as a vendee who has been put in possession by the vendor under a parol contract to purchase, which takes the contract out of the statute of frauds, and, if taken out as to one, it is out as to all. In *Ashcraft* v. *Tucker*, 136 Ark. 447, 206 S. W. 896, it is said:

"It has been held by this court that delivery of possession of land to the vendee under a parol contract of purchase takes the case out of the operation of the statute of frauds; and that possession alone is sufficient part performance of an oral contract for the sale of land to sustain a decree for a specific performance."

The above language was quoted with approval in *Central Bank* v. *Downtain,* 162 Ark. 46, 257 S. W. 746, and the same rule has been adhered to in a long line of cases.

We find no error, and the decree is accordingly affirmed.